United States District Court
Southern District of Texas
**ENTERED**
March 11, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Diana Garzoria, | § § § | |
| *Plaintiff,* | § § | Case No. 4:22-cv-03606 |
| v. | § § | |
| Kilolo Kijakazi, Acting Commissioner of Social Security Administration,[1] | § § § § | |
| *Defendant.* | § § | |

## MEMORANDUM AND ORDER

This is an appeal from an administrative ruling denying disability benefits.  The case was transferred to the undersigned judge upon consent of the parties.  Dkt. 14.  After carefully considering the parties' briefs, Dkt. 19, 21, 22, the administrative record, Dkt. 10, and the applicable law, the Court grants Defendant's motion for summary judgment (Dkt. 20) and denies Plaintiff Diana Garzoria's motion for summary judgment (Dkt. 18).

## Background

Diana Garzoria worked as a cashier for ten years from 1992 to 2002.  *See* R.78.  After that, she briefly worked for a dry cleaning business, followed by a

---

[1] Although Martin O'Malley became the Commissioner of Social Security Administration on December 20, 2023, no request to substitute him as Defendant has been filed.

stint at Target in 2003 or 2004.  R.78-79.  She reported working again as a cashier from January 2008 until her condition caused her to stop working on February 14, 2015.  R.100-01, 117, 223.  But the records do not show she engaged in substantial gainful activity for the last 15 years.  R.35; R.218.

According to Garzoria, she suffers from knee, hand, wrist, arm, shoulder, back, and hip problems, blurred vision, and arthritis.  R.63-64, 222, 272, 285.  To date, Garzoria has been diagnosed with the following physical medical conditions: lumbar sprains; cervical muscle strains; arthralgia of the shoulders, wrists, and hands; bilateral knee pain; bilateral hand pain; left hip pain secondary to degenerative joint disease; obesity; hypertension; interior quadrantanopia on the right eye; and decreased visual acuity of unknown etiology.  R.317, 325, 334.  She was advised to seek a primary care provider for reevaluation of her pain, R.317, and to consult with a neurologist to determine the cause of her vision decrease and visual field deficit, R.325, but the record does not reflect any further medical examinations.

Garzoria filed for social security benefits under Title XVI of the Social Security Act on October 30, 2019.  *See* R.199, 221-27.  Although Garzoria initially claimed a disability onset date of February 14, 2015, that date was later amended to reflect the date she filed for disability—October 30, 2019.  *See* R.32, 59.  After her claim was denied, Garzoria requested and obtained a hearing before an administrative law judge (ALJ).  R.133.

At the hearing, Garzoria testified that she has suffered from arthritis since she was young and that the condition is hereditary.  R.65.  She described having difficulty handling things and how her fingers and hands swell and lock up, causing pain.  R.66.  She expressed struggling to raise her right arm above her shoulder.  R.66-67.  According to Garzoria's testimony, her husband often assists her in getting dressed and taking showers.  R.65, 67.

Garzoria also reported swelling in her knees, causing them to buckle.  R.67.  Rubbing her knees and applying heat sometimes eases the pain.  R.68.  To move around, Garzoria uses a borrowed walker, although she asserted that she was prescribed a cane.  *Id.*  Garzoria maintained that she can only stand for about five or ten minutes before the pain makes her knees buckle.  R.71.  She described being able to sit for up to an hour and a half before needing to move around.  *Id.*  And she testified about being able to carry her 11-pound granddaughter, although she needed to sit down with her.  R.72.

In addition, Garzoria asserted that she suffered from back spasms that shoot up her neck.  R.69.  She indicated that the spasms immobilize her from 30 minutes to several hours at a time and occur about three times a week.  *Id.*  She claimed to be taking Tylenol and a prescribed arthritis medication whose name she could not recall.  R.70.

As another issue, Garzoria described how her vision had declined.  R.69.  Even while wearing glasses, she can no longer read newspapers and must be

3

very close to her cell phone and the television to make things out.  R.70.  Her vision issues, coupled with bouts of pain, render her unable to drive.  R.72.

In response to the ALJ's questions, Garzoria's attorney admitted that nothing in the medical records indicated that Garzoria was prescribed either a cane or walker.  R.75.  The attorney also admitted that none of Garzoria's treating sources opined about her limitations.  R.77.

After the hearing, the ALJ issued a decision that concluded Garzoria did not qualify as disabled.  R.32-43.  The ALJ first concluded that Garzoria had not engaged in substantial gainful activity since October 30, 2019—the date Garzoria filed for social security benefits.  R.34.  Next, the ALJ concluded that Garzoria has two severe physical impairments: morbid obesity and "vision loss/inferior quadrantanopia of the right eye."  R.35.  Upon analyzing Garzoria's medical records, however, the ALJ concluded that her arthritis is not a medically determinable impairment, and if it were, it is not severe.  R.36.

After finding that Garzoria's physical impairments do not meet or medically equal a listed impairment, the ALJ turned to formulating Garzoria's residual functional capacity ("RFC").  In addition to detailing certain medical records, the ALJ evaluated the opinions of Garzoria's physicians and state agency consultative examiners.  R.38-41.  From there, the ALJ concluded that Garzoria can perform "light work," subject to the following limitations:

> [S]he can stand and/or walk 4 hours in an 8-hour workday.  She
> should never climb ladders, ropes, scaffolds, stairs or ramps.  She
> can perform other postural activities occasionally.  She should not
> perform a job that require[s] fine visual acuity or frequent reading.
> She should avoid unprotected heights and work around hazardous
> machinery.

R.36-37.

Based on this RFC, Garzoria's age, education, and her lack of past relevant work, the ALJ found that Garzoria can perform jobs that exist in significant numbers in the national economy, namely the positions of marker, garment bagger, and bundler.  R.41-42.  Therefore, the ALJ determined that Garzoria does not qualify as disabled under the Social Security Act.  R.43.

Garzoria appealed the ALJ's determination to the Social Security Appeals Council, which denied review. R.1.  This appeal followed. Dkt. 1.

## **<u>Legal Standard</u>**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."  *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'"  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is "more than a

scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (internal quotations omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I.   Legal framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is … disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776

(5th Cir. 2015) (citing 20 C.F.R. § 416.920(a)(4)) (footnote omitted).  Before moving from step three to four, the ALJ determines the claimant's RFC, which is used to evaluate steps four and five.  *Id.* at 776 n.2 (quoting § 416.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops …."  *Id.* at 776 (citing § 416.1520(a)(4)).  The claimant bears the burden of proof at the first four steps.  *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017).  At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform."  *Id.* at 753-54.

## II.   Substantial evidence supports the ALJ's determination that Garzoria does not qualify for disability benefits.

Garzoria's arguments target the ALJ's findings at step two, which addressed the severity of her asserted impairments.  According to Garzoria, the ALJ erred in failing to classify her back, knee, hip, arm, shoulder, wrist, and hand problems as medically determinable impairments.  Dkt. 19 at 7-11; Dkt. 22.  This omission, in turn, allegedly tainted the ALJ's subsequent formulation of the RFC, as well as the conclusion that Garzoria can perform certain jobs available in the national economy.  Dkt. 19 at 10.

In response, the Commissioner does not seriously defend the ALJ's exclusion of the above-listed conditions as medically determinable

impairments.  Instead, the Commissioner argues that Garzoria cannot show that this misclassification was harmful error.  *See* Dkt. 21 at 9.  The Commissioner notes that the ALJ explicitly considered Garzoria's complaints throughout the decision, including when formulating the RFC.  *See id.*  Thus, nothing indicates that classifying those complaints as medically determinable impairments would have led to a more restrictive RFC.  *See id.*

As detailed below, the Court concludes that the ALJ erred in finding that Garzoria's back, knee, hip, arm, shoulder, wrist, and hand problems are not medically determinable impairments.  Nevertheless, as the Commissioner asserts, Garzoria has not shown that the error was harmless.

### A.   The ALJ incorrectly concluded that certain conditions are not medically determinable impairments.

At step two, the ALJ found that Garzoria had two medically determinable impairments: morbid obesity and vision loss/inferior quadrantanopia of the right eye.  R.35.

But the ALJ found that Garzoria's complaints about arthritis in her hands, wrist, arms, shoulders, knee, hip, and back lacked supporting medical evidence, and are not medically determinable impairments.  R.36.  He noted that Garzoria did not exhibit any active joint inflammation or synovitis during a consultative examination in October 2020.  *Id.* (citing R.316-17).  Rather, the consultative examiner determined that Garzoria suffered from lumbar sprains,

8

cervical muscle strains, and joint pain of the shoulders, wrists, and hands. *Id.*
Those findings were consistent with x-rays of the lumbar spine completed that
same month, which demonstrated no fractures and normal disc spaces. *Id.*
(citing R.321). The ALJ further noted that during a consultative examination
seven months later, Garzoria demonstrated 5/5 bilateral grip strength, and a
hand examination showed no swelling or deformity. *Id.* (citing R.334, May
2021 exam). Moreover, x-rays showed no evidence of fracture or dislocation on
her right hand and only mild spurring on the left hip, which was indicative of
early degenerative change. *Id.*

"[A] medically determinable physical or mental impairment[] [is one]
that could reasonably be expected to produce the symptom(s) alleged." SSR
96-4p. Medically determinable impairments "must result from anatomical,
physiological, or psychological abnormalities that can be shown by medically
acceptable clinical and laboratory diagnostic techniques. Therefore, a physical
or mental impairment must be established by objective medical evidence from
an acceptable medical source." 20 C.F.R. § 416.921. The ALJ "will not use a
[claimant's] statement of symptoms, a diagnosis, or a medical opinion to
establish the existence of an impairment(s)." *Id.* But "[m]edically acceptable
evidence includes observations made by a physician during physical
examination and is not limited to the narrow strictures of laboratory findings

or test results." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (quoting *Ivy v. Sullivan*, 898 F.2d 1045, 1048-49 (5th Cir. 1990)).

Physical examination results are "clinical findings [that] constitute objective evidence from an acceptable medical source and support the finding of a medically determinable impairment." *See Lopez v. Saul*, 2021 WL 3021953, at *3 (S.D. Tex. July 16, 2021). In *Lopez*, the claimant challenged a finding that objective evidence did not show his knee or back pain constituted medically determinable impairments. *Id.* A consultative examiner had concluded that the claimant suffered "tenderness in his back, difficulty bending and squatting, tender knees, and a decreased range of motion in his knees and back." *Id.* The examiner's report included a chart reflecting that the claimant had a limited range of motion. *Id.* On review, the court agreed with the claimant, concluding that "the ALJ erred by failing to consider the clinical evidence of [claimant's] back and knee limitations and by instead relying only on the negative findings in the x-rays." *Id.*; *see also* 20 C.F.R. § 416.921.

Like in *Lopez*, the ALJ here failed to properly consider Garzoria's tenderness to palpation and range-of-motion limitations as recorded in the report of a consultative examiner, Dr. Phong Luu. Dr. Luu noted Garzoria's tenderness along her cervical and lumbar spines, acromioclavicular shoulder joints, lateral wrist joints, joint lines on both knees, and lateral hips. R.316. Yet nowhere does the ALJ's opinion mention these findings. *See generally*

R.32-43.  Much like the consultative examiner in *Lopez*, Dr. Luu attached a chart that documented Garzoria's limited range of motion.  R.319-20.  The measurements were below normal in all the affected areas—sometimes significantly so (5° back extension where 25° is normal; 35° extended knee hip flexion where 100° is normal; 110° knee flexion where 150° is normal).  *Id.*  But the ALJ's opinion glosses over these findings, referencing Garzoria's decreased range of motion only in passing.  *See* R.36.

The ALJ's opinion also fails to mention the findings of consultative examiner Prem K. Nowlakha, M.D., which further indicate that Garzoria has a decreased range of motion in her knees and hips.  Garzoria was only able to perform an extended knee hip flexion to 20° on both sides (100°normal) and her knee flexion was restricted to 110° (150° normal).  R.337.

Instead, the ALJ focused on the lack of evidence of any joint inflammation, synovitis, swelling, or deformity, and the negative findings in the x-rays, to dismiss Garzoria's alleged arthritis as a non-medically determinable impairment.  R.36 (citing R.316-17, 321).  This reliance on laboratory findings, to the exclusion of other evaluations, is exactly what amounted to error in *Lopez*, 2021 WL 3021953, at *3.  Contrary to the ALJ's opinion, there *is* "objective medical evidence that support[s] finding the claimant has a medically determinable impairment related to her alleged symptoms."  *See* R.36.  This was error.

**B.     The error was harmless.**

Notwithstanding the ALJ's error, Garzoria must also show that the error was prejudicial.  *See Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012).  To do so, Garzoria must show that "she could and would have adduced evidence that might have altered the result."  *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (internal quotation marks omitted).

Garzoria attempts to meet this standard by asserting that the ALJ's conclusion that her arthritis is not a medically determinable impairment, at step two, tainted the RFC.  Dkt. 19 at 9-10; Dkt. 22 at 1.  In particular, the RFC provides that Garzoria can perform light work, with some additional limitations: (1) standing, walking, or both, only four hours each workday; (2) frequent balancing or stopping, but kneeling, crouching, or crawling only occasionally; (3) no climbing of ladders, ropes, scaffolds, stairs, or ramps, although she can perform occasional postural activities; (4) no activities requiring fine visual acuity or frequent reading; and (5) no work involving unprotected heights or hazardous machinery.  R.36-37, 41.

According to Garzoria, the foregoing RFC failed to account for arthritis-related problems with her hand, shoulder, neck, and wrist that limit her ability to reach, handle, and finger objects.  *See* Dkt. 19 at 10.  And because the jobs identified at step five all require reaching, handling, and fingering, Garzoria maintains that the step two error caused prejudice.  *Id.*

On the other hand, the Commissioner contends that Garzoria cannot show that her RFC would be more restrictive had the ALJ, at step two, classified her arthritis as a medically determinable impairment. Dkt. 21 at 9. For one thing, the Commissioner notes that the impacts of Garzoria's arthritis are not severe, even if they qualified as medically determinable impairments. *See id.* at 4 n.2 (quoting R.35). And the Commissioner maintains that the ALJ explicitly considered all impairments, whether medically determinable or not, when forming the RFC. *Id.* at 9.

1. <u>Ample evidence supports the ALJ's formulation of the RFC.</u>

Before step four in the disability evaluation process, the ALJ must determine a claimant's RFC—the "most the claimant can still do despite [her] physical and mental limitations." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 416.1545(a)(1)). When forming the RFC, the ALJ is "required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

Garzoria relies on Dr. Luu's findings and her complaints of pain to challenge the RFC. *See* Dkt. 22 at 2-4. These contentions are related because an ALJ must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the medical evidence, and other evidence." 20 C.F.R. § 416.929(a). But the

13

ALJ has "discretion to determine the disabling nature of a claimant's pain," and that "determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

Garzoria's focus on some of Dr. Luu's findings does not account for other, significant medical evidence detailed in the ALJ's opinion, including other portions of Dr. Luu's report. The ALJ acknowledged Dr. Luu's observation that Garzoria has joint pain in the shoulders, wrists, and hands, among other ailments. R.36 (citing R.317 (identifying arthralgia)). Yet Dr. Luu's report also noted Garzoria's ability to push with her hands to rise from a seated position. R.39 (citing R.316). In addition, Garzoria's "[m]uscle strength was 5/5 in all muscle groups except hand grip," which was 4/5 with "fair" effort. *Id.* (citing R.317). Despite her resting hand tremors, Garzoria had no muscle atrophy and "demonstrated fine finger control to dexterous movement." *Id.*

Reports by other physicians include similar findings. Dr. Nowlakha's examination diagnosed Garzoria with bilateral hand pain. R.334. But Garzoria's hands showed no swelling or deformity. *Id.* X-rays of her right hand showed no evidence of fractures or dislocation. R.334, 336. And treatment records show that Garzoria's grip strength improved to 5/5 in 2021. *Compare* R.317 (October 2020 exam, grip strength 4/5), *with* R.334 (May 2021 exam, grip strength 5/5).

14

The ALJ also evaluated the findings of two state consultative examiners, including one provided on reconsideration.  The initial evaluation by Dr. Patty Rowley concluded that Garzoria's statements regarding her pain symptoms were only partially consistent with the medical evidence.  R.98.  According to Dr. Rowley, Garzoria was capable of standing, walking, or sitting for about six hours each workday and her ability to push and pull, including operation of hand controls, was unlimited.  R.99.  Dr. Rowley also determined that Garzoria could climb ramps and stairs occasionally, and stoop, kneel, crouch, and crawl frequently.  *Id.*  Thus, Dr. Rowley concluded that Garzoria could perform light work, with some limitations on lifting.  R.99, 101.

At the reconsideration stage, a second state consultative examiner, Dr. Charles M. Murphy, reviewed Dr. Luu and Dr. Nowlakha's reports, acknowledged Garzoria's pain symptoms, and concurred with Dr. Rowley's findings that Garzoria had no manipulative limitations and could lift and carry enough weight to perform light work (20 pounds occasionally and 10 pounds frequently).  R.113-16; *see also* 20 C.F.R. § 416.967(b) (lifting requirements for light work).  But unlike Dr. Rowley, Dr. Murphy concluded that Garzoria could kneel, crouch, and crawl only occasionally.  R.114.

The ALJ analyzed the conclusions of both state consultants and found Dr. Murphy's opinion to be better supported by the record.  R.41.  The ALJ thus restricted Garzoria to occasional "postural activities."  R.41.  But the ALJ

agreed with Dr. Rowley and Dr. Murphy that Garzoria had no limitations on her ability to manipulate objects and could walk or stand sufficiently to perform light work.  *Id.*  The ALJ could properly adopt these opinions.  *See, e.g.*, *White v. Kijakazi*, 2022 WL 784480, at *7 (S.D. Tex. Mar. 15, 2022) (an ALJ may "in her discretion rely on the state agency consultants' opinions in formulating the RFC").

The ALJ also acknowledged and addressed Garzoria's pain symptoms and any related limitations.  The ALJ noted Garzoria's description of suffering hand pain "24/7."  R.37.  He acknowledged Garzoria's alleged difficulty grabbing things, bathing, and getting dressed.  *Id.*  He also took note of her attested back spasms that shoot up her neck.  R.38.  But given the other evidence detailed above, the ALJ concluded that impact of Garzoria's pain was not as limiting as she maintained.  *Id.*

In fact, the ALJ attributed a great part of Garzoria's pain and consequent limitations on certain extremities to her medically determinable obesity.  R.39-40.  Significantly, he indicated that "obesity increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities."  R.39.  Because "her obesity likely exacerbates the pain and other symptoms she experiences, … resulting in more substantial functional restrictions," the ALJ accommodated Garzoria's obesity with her

16

assigned RFC.  R.40.  That is why the ALJ prescribed standing, walking, postural, and climbing limitations.  R.36-37.

Garzoria does not engage the ALJ's analysis of the evidence pertinent to her RFC.  Instead, she cites *Bennette v. Astrue*, 2009 WL 840216, at *1-8 (W.D. La. Mar. 27, 2019), to argue that a failure to find arthritis a medically determinable impairment warrants reversal.  Dkt. 19 at 8.  But in *Bennette*, the ALJ disregarded the claimant's frequent treatment, pain medications, and radiological evidence reflecting her arthritis.   2009 WL 840216, at *5-6.  Moreover, the ALJ in *Bennette* failed to consider the claimant's functional limitations, including her pain.  *Id.* at *6.  The record here, however, lacks analogous evidence.  There is no indication that Garzoria received treatment for her alleged arthritis or was prescribed medication to manage her pain.  And unlike the record in *Bennette*, Garzoria's scans show only mild spurring along her left hip "reflecting early degenerative change."  R.334.  No radiographs reflect even similarly mild changes in her hand, shoulder, neck, or wrist.

In short, the ALJ adequately detailed the evidence of record, which provides a substantial basis to conclude that Garzoria's arthritis does not require further limitations in her RFC.  And based on that RFC, the ALJ could properly conclude that Garzoria can perform light work as a marker, garment bagger, or bundler.  *See* R.41-42.  As a result, Garzoria cannot show that "a different administrative conclusion would have been reached even if the ALJ"

had erred earlier in the analysis. *See Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (finding harmless error).

        2.    <u>The ALJ did not substitute his lay opinion for the medical opinion of experts.</u>

Barely in passing, and for the first time in a reply, Garzoria asserts that the ALJ substituted his lay opinion for the medical opinion of experts. *See* Dkt. 22 at 3. This contention is unfounded.

The ALJ did not "reject[] the medical opinions of ... examining doctors ... without contradictory evidence from a medical expert of any kind." *See Salmond v. Berryhill*, 892 F.3d 812, 819 (5th Cir. 2018). Rather, the ALJ explicitly relied on specific findings by Dr. Luu, as well as opinions by state consultative examiners. *See* R.40-41. The Court cannot reweigh the evidence underlying the ALJ's conclusions. *See Brown*, 192 F.3d at 496.

In sum, Garzoria has not shown that the ALJ would have included more restrictions in the RFC had Garzoria's arthritis been classified as a medically determinable impairment. *See Lopez*, 2021 WL 3021953, at *4 (analogous conclusion). Accordingly, Garzoria has not met her burden of showing that the error at step two was prejudicial.

## <u>Conclusion</u>

For the foregoing reasons, the Court **DENIES** Plaintiff Diana Garzoria's Motion for Summary Judgment (Dkt. 18) and **GRANTS** Defendant Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 20).   It is therefore **ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Signed on March 11, 2024 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

19